Mr. Herbert? Yes, sir. Not ABAIR. I got it right for once. You must not be familiar with ABAIR. May it please the Court, there are a few critical points in this, and if you have questions, obviously I'll take those, but this is not an appeal of any action with regard to this single sign structure, 5821. We made it very clear in our complaint, paragraph 27, that Lamar was seeking a declaratory judgment of this Court that any sign structure, wherever located, erected prior to April 15, 2008, may exceed 40 feet in height, and that those structures are conforming. This case started getting off track when Judge Girola started treating it as an appeal of this one decision. Initially, he was very clear. He said, on the motions for summary judgment, he said to me, all right, this case is here on cross-motions for summary judgment, the central issue being the interpretation of the Mississippi statute and whether or not that statute was used. But you can understand that he's — he has abstention instincts, thinking height, Mississippi signage heights, that's primary jurisdiction in the MTC, correct? Girola, not even primary? Girola, not primary. Well, you asked them for a modification. We know we gave them notice. We have no obligation to give them notice. You didn't need to give them even notice? You didn't need to give them notice? We gave them notice. No, you didn't need to, though. Didn't need to, but required to under any of their regulations, because this was a conforming sign. We just gave them notice so they would know what we were doing, trying to be a good citizen. The district court said, no, the best equivalent here is this is building a new sign. It's the giant vertical one now suddenly going to be a big horizontal. That's like a new one. It would be covered under Section 1800. I would disagree with him strongly, because it — the sign stays the same. We're just cutting part of it off. We're modifying. We do that every day. And part of the case, which Mississippi Supreme Court changed it, is that's the way they've always interpreted it. This is the first time they've done this and said, wait a minute, if it's over 40 feet in height, we're not going to take it down. All those signs on Interstate 10 going from here to Mobile after Katrina, they were down, broken. They allowed us to repair every one of those, even pick ones out of the trees. As soon as you say they allowed us, that's acknowledging it is MTC's jurisdiction. They are the agency that regulates billboards in Mississippi. That is correct. Okay. So on that notion, I'm not saying this is determinative for your case, but it seems like it all was appropriately there, and then I admit they didn't seem to want to resolve it. They tell you to go to the legislature, and they don't want to resolve it in your own State court. Then the MTC removes it to Federal court. There it is. But there is an understandable reluctance for the district court. Well, I'll stop there. That's not really a question. It's just he's got one sign, and he's impatient. Now, he may have been wrong when he resolves it with administrative exhaustion. Your point is it doesn't exist. It's not there. It's futile. You've been trying for four years, right? Correct. And look, I have utmost admiration for Judge Barola. I love him as a judge. But to rely on primary jurisdiction, we cited the case of Taylor versus U.S. statute in clear and unequivocal terms that gives that body the right to determine the question. But, again, I shouldn't have taken you down this route. Because let's say they have primary jurisdiction. It still doesn't mean that you somehow didn't exhaust. You started with the MTC. I did try. I did try. So his ruling is one of exhaustion, correct? Correct. That was his turning point. He found a limit to primary jurisdiction. And what's your best case that there was nothing to exhaust? Taylor versus U.S. Treasury. It defines, this court defined what is primary jurisdiction. Absent that becomes jurisdictional. Again, it's got to be clear and unequivocal that the Congress or even Mississippi legislature delegated to that agency exclusive jurisdiction to decide this question. There are no congressional enactments applicable here. There is no Mississippi statute that does that. What the state has argued is this broad act that sets up the Mississippi Transportation Commission. I think it has 20-something powers, among which is to give pens, service pens, to their employees. It's nothing to do with appeals. But, yeah, I'm not denying that within the whole scheme of things, the Mississippi Transportation Commission regulates outdoor advertising. But they don't provide for any appeals. 1800 doesn't apply because they admit it doesn't apply. I mean, Judge Girola did not want to address this question if he could find a way not to. And so he came up with this primary jurisdiction. But he was simply wrong. And so if we're looking at we're making an eerie guess here. If we're looking at Mississippi law, the case that seemed most in favor of your arguments was Hawkins. Is that right? Yes. Hawkins and Weems. Those two cases, they tell you that if there's not primary jurisdiction, then do you still have to exhaust? And they have the five factors that argue against it. And I won't go through all of them. I did it in the brief. The big one, though, is it's a question of law. And do we want the Mississippi Transportation Commission sitting as a full committee, two insurance agents and a traffic consultant, elected officials deciding the statutory construction, whether the statute is ambiguous or not? Of course we don't want to do that. And that's why that exception has always been there. That if it's a question of law, it's the province of the courts, not some administrative agency. You say that the regulators should interpret the statutes that direct their behavior. You think that? I disagree with that when it's a question of law. The courts make very clear, Weems and others make clear, if there's factual questions that are within the province of that agency, then they can resolve those, but not questions of law. And when the disposition of the case turns on a question of law, it should go to the courts without the requirement of exhaustion. And in this case, there is nothing here to be decided by the Transportation Commission fact-wise. The sign is what it is. We told them. They said, we apply this statute, and it's over 40 feet, and you can't do it. So it's purely a question of law. They say they'll give you a hearing now. No, they did not do that. And I beg to differ. Judge Carolla said, They agreed to give you a hearing. These gentlemen, and I love them, too, agreed to give us a hearing. Love everyone. But they don't bind the Commission. The Commission speaks only through its minutes. And you would think somewhere in all this long process, someone would have passed a resolution saying, We hereby give Lamar an appeal. They haven't done it. If you remand it back — Is there a motion to reconsider still out there in the nether sphere? There was a motion to reconsider by you. No. Well, we wrote them a letter and asked them to reconsider their position. Did you get an answer to that? No. They ignored that letter, too. So they ignored every opportunity, every chance I had to try to bring this issue up and get it resolved. They cannot bind the attorneys. That's just an argument. They argue that this one enabling statute is broad enough to give the MTC the power. But if you remand — if you sustain Judge Girola's opinion, then I'm left with what? I write the MTC a letter and say, Pretty please give me an appeal? Well, they have two things. They can say — they can ignore it like they did the last letter, or they can say no. Then where do I go? What court do I go to then? I'm stuck. I have no remedy. And I think I'm entitled to a remedy. And it is a judicial question. And I think the district court should take this issue and make the hard decision about interpreting this statute. You're not asking for a modification of construction. You want a declaratory judgment about this statute and presumably all signs that were built before 2008. That's what you're looking for. Correctly. That's correct. We probably have over 100 signs that are infected by this new interpretation that they came up with. And that's why we said, Wait a minute. We've got to challenge that because they've never done that before. And it means a whole lot of money to Lamar, a whole lot of money. And so, yes, we're looking for the broad declaratory relief as to all signs that exceed 40 feet in height that were built before April 15, 2008. So there's no primary jurisdiction with due regard to Judge Varola. He's just wrong. I noticed when I reread his opinion this morning — go back to the Taylor case, this court's case. It was dealing with an IRS regulations. And it went through great analysis of all the details and the points and subpoints of whether the IRS regs gave an appeal and determined that it did not. And it was not meeting that clear and unequivocal terms. Judge Varola didn't cite any statute. He said, Well, the highway department argues this. And maybe it kind of looks like 1800. But he never said, I hereby find that this statute, congressional or Mississippi legislature, clearly and unequivocally grants a right to appeal. Well, I think under this court's holding, that just leaves a huge gap that you haven't made the case for primary jurisdiction. That eliminates the right in the district court to simply say, I don't have jurisdiction because of that. The court has jurisdiction. It can still exercise and say, Lamar, you go exhaust the administrative remedies and we'll hold off. We'll hold this case in abeyance until then. But we're faced with the same thing. We go to the Mississippi Transportation Commission, an elected public body, to decide whether this statute is ambiguous, to apply the rules of statutory construction. And I just don't think we want that. We just really don't. And I made the point that this is an elected body and they're very subject to lobbying and whatever. I mean, that's what Harrison, the legislature, is one of our competitors, went and got the bill killed. Well, you think if we wind up in front of the whole Transportation Commission, they're not going to be over there lobbying them, saying don't help Lamar? That's not the way we want to interpret statutes. That's what the courts are for. That's the province of the courts. But you agree for individual sign modifications, if a court were to clear up the language, for individual sign modifications, you do go to MTC. They have primary jurisdiction. If the court clears up the statute and the MTC or MDOT makes a wrong decision applying that interpretation of the court, yes. Okay. That's not what we have here. Yeah. All right, counsel. The only point I would make is for the court to consider the consequences of affirming the trial court's decision. First of all, there's no guarantee that they'll ever give us an appeal. They didn't the first time. Four years now. Again, a meeting of the elected Transportation Commission is not an appellate body. We don't know what rules govern it, what rules of law apply. Is it a no vote appeal or what? There are three elected people. They're not lawyers. We don't want them doing statutory instruction. And again, in this case, we say that if you find that the statute, and I'm talking to the MTC now, the statute is not ambiguous and we're going to apply it as written, we've got a $10 million reverse condemnation, inverse condemnation case. Well, how are they going to handle that? Are we going to be comfortable? They're going to award us damages? I don't think so. So it's a nonsensical result. I think the only sensible result here is to reverse Judge Girola's decision, send it back to him, let him decide the cross motions for summary judgment, and make a decision. And we might be back, we may not. That's my principal argument, unless the court has any questions of me. We appreciate it. Thank you, counsel. Thank you. Mr. Smith, good morning. Morning. What shall I then say to these things? Your brief wasn't enthusiastic defending the exhaustion requirement. It's five pages long in argument, five cases cited. I think that the district court correctly decided the exhaustion issue in its opinion. And yet, you hadn't ever urged it. Even when you removed to district court, you'd never urged dismissing it on the theory of exhaustion. That's correct. So he comes up with it, and here you are defending it, which is appropriate. The brief was very thin. Yeah, and I'd say that there are things about the way this was handled, on my part, that I do regret in not being as alert as the district court was in finding the remedy that he did. But I do think that the district court's discussion and application of the exhaustion issue is correct. I do take issue with Lamar's contention that no remedy was available or made available. The record does show that there was, after the initial request for a hearing was made, that there was discussions between MDOT staff and Lamar regarding the legislation. And that was a time-consuming process. They went to two different legislative sessions to address that issue and failed. I think it's noteworthy that the record reflected that on March 31, 2017, when the proposed bill died in committee, and then this lawsuit was filed April 4, just less than two weeks thereafter, there was no renewal on the part of Lamar for an administrative hearing in between times. He's relying on the fact that he made it in 2015. And there was a response to it. The response was not a formal thing, but the response was they had these discussions about the legislation and whether or not it should be changed. And that process took its course. Then after that, Lamar rather quickly decided to go to court with this issue. Do you agree, and we're applying Mississippi law here, right? Yes, sir. So do you agree that with respect to administrative exhaustion, we need to be looking at the Hawkins and the Weems factors as to whether exhaustion is really appropriate here? So do you agree with counsel's opposite's view that what we're talking about here is a question of law? What does the statute mean with respect to sign height, and what's grandfathered and what's not? I don't think that the question of the interpretation of that statute is before this court. No, I agree with you. You may be on solid ground there, but the underlying question that they may have to exhaust, or maybe they don't, is one of law. I think it is, with statewide application. Yes, and I do agree with that, that it is a statewide application. So their point is, why wouldn't it be inappropriate for an administrative body, like the one here, the MTC, or whatever it's called, why would it be more appropriate for that body to deal with a question that seems more suited to judicial determination? Well, the Highway, and I say Highway Commission, that's a vernacular term. And just for information purposes, the Mississippi Transportation Commission has oversight over highway operation, construction, and maintenance. They control the issues of railroad crossings, and other issues related to transportation statewide. The responsibility for outdoor advertising was delegated to the commission by the legislature back after the Highway Beautification Act was put into effect. So there is, that responsibility has been statutorily delegated to the Mississippi Transportation Commission. Also, by way of information, the Mississippi Department of Transportation is regarded as the executive arm of the commission. The department cannot act on its own without approval by the commission on its minutes of any actions that are taken. But you heard him. He's not disputing that individual sign modifications, grandfathered or not, once the law is clear, come to you. But sort of consistent with what I thought MTC's earlier position in this four years of procedural mire was, we don't decide it, go to the legislature. That's their language. That was agreed upon by MDOT staff. Once again, the commission never actually considered that issue in its minutes. MDOT staff came to that, what I would call, an understanding with Lamar in order to try to resolve it. That's a factor. I don't know if it's in the Hawkins decision or Weems, that this putting an entity in this world of ping pong, where the staff says one thing, the commission isn't bound by that, they have to go to the legislature and then come back. That's all part of the Hawkins factors that would favor them not being thrown back into that world of ping pong. I would... I see your point there. However, this was an understanding that was agreed upon by both sides. MDOT officials didn't force Lamar to go to the legislature and try to get the legislation changed. That was an understanding that Lamar would undertake it and do it. Hasn't the commission already indicated how they interpret the statute? What do you get out of a hearing? They have not? As far as the height issue, they have not ruled on that. I thought that they'd already taken the position that that sentence before the one that's sort of absolute, all signs, once modified, have to be under 40 feet. I thought that was the position they'd taken. That's a petition, certainly, that we put in our brief. Yes, sir, that is correct. So it's in your brief, it's the position of the commission. So what's a hearing going to clarify as to that? That's already the regulator's interpretation of the law. What do they get out of a hearing? Just get told that? Well, because the commission does have authority to grant a variance in a particular issue if they choose to. There's three ways that they can act upon a hearing. They could just grant Lamar's request outright by a variance or they could deny it. Without one sign? Yes, sir. And I'll point out that as far as the Transportation Commission hearing issues that are legal in nature, they, you know, not routinely, but several times during the year, the commission meets 24 times a year, typically twice a month. But they routinely hear a bid protest by a contractor and those have legal implications to do. And sometimes they rule in favor of the contractor and go ahead and award a project. Sometimes they say, no, you don't meet the criteria under the present set of circumstances. But those are legal decisions as well and certainly have legal implications. It seems true for railroad crossings or other things. I'm just pointing out that the idea that they are not capable or equipped to handle decisions of this nature is not consistent with the practice that's been in the past. Thank you, counsel. If you have no other questions, I don't know that there's much more I can add. Thanks for your time. We appreciate it. Mr. Butler? Just briefly, I'm glad to hear that the MTC agrees that this presents a question of law. That's clear. In their brief, they kind of said, well, maybe not. But I think I heard him say that he agreed with that. Was that drives the decision as far as I'm concerned is that, you know, exhaustion does not apply because it's going to be a question of law. Again, they make the same argument they did in their briefs and in the court below that this broad, encompassing statute that established the Transportation Commission, well, it gives them the authority to grant an appeal if they want to. Well, they haven't. It's been four years and they haven't wanted to. But it's just an argument of counsel. It's not binding. On page six of their brief, there's a note there where they talked about this agreement to go to the legislature. And it wasn't Lamar. It was both parties. Well, let's go to the legislature and clear this up. They challenged that and said, well, that's not binding. That was an invalid, I think that's the word they used, an invalid act on behalf of the highway people because it was not spread on the minutes of the commission and the executive director didn't sign anything. Well, there's nothing spread on the minutes now and the executive director hasn't signed anything in this case. So we're just having counsel saying, well, it's broad enough. Maybe they'll give you one, Lamar, and maybe they won't. I agree with Your Honor's description of ping pong. We have been, we've tried everything we can to get a reason, a decision here. Just interpret this statute and let us go on. I think they're saying now, it seems like, accept our interpretation but ask us for a variance. You're right. And that's another factor in the weems is futility. So we walk into the commission and these guys are representing them and we're making our arguments and we've already decided. We're just flailing at windmills here. This is not going to do any good. And then where do we go? We go back to Judge Girola. Do we appeal that decision to Judge Girola or state court? We've left with no remedy. Let's get this thing resolved. I think Judge Girola has a jurisdiction. It's a tough decision. I understand his reluctance, but we want him to make a decision. There was a reference to variance and I think Your Honor correctly pointed out. Well, you may grant him a variance from this ambiguous statute for this one sign, but this is not about one sign. The one sign isn't there because of the case or controversy for declaratory relief, whether under state law or the Federal Declaratory Relief Act, there has to be a case or controversy. That sign was the application of that vague and ambiguous statute to that one sign was the case and controversy. But other than that, that one sign doesn't drive this. It's declaratory relief for the whole thing. And again, they say, you know, well, we have the authority to regulate outdoor in Mississippi. We agree, they do. But that's not the clear and unequivocal statement that this court required in the Treasury case and says that has to be so clear that Congress or the Mississippi legislature is dictating that you have to go to the agency first. That's not here. Nothing in that statute even mentions appeals of any kind. Thank you. Thank you both. Are the cases submitted? We'll hear the last case.